## Case No. 13,300.
### STANWOOD v. FORDYCE.
[See Case No. 15,130.]

## Case No. 13,301.
### STANWOOD v. GREEN.

[2 Abb. (U. S.) 184; 1 11 Int. Rev. Rec. 134; 3 Am. Law T. Rep. U. S. Cts. 133; 17 Pittsb. Leg. J. 153; 2 Leg. Gaz. 302.]

District Court, S. D. Mississippi. June, 1870.

INTERNAL REVENUE—POWERS OF SUPERVISORS.

1. A supervisor of internal revenue is entitled, under the provisions of the internal revenue act of July 20, 1868, § 49 (15 Stat. 144), to examine the books and papers belonging to banks. bankers. brokers. and banking associations. and is not bound to inform the owners of his purpose in making such examination.

2. Where a summons for the production of books has been issued by the supervisor of internal revenue, and such summons has been duly executed. but not complied with, a United States district judge may. upon application, and proof of these facts. issue a writ of attachment.

3. Section 49 of the act of July 20, 1868 (15 Stat. 144), which gives supervisors of internal revenue the right to examine such books and papers as show the operation of banks, &c., with the public, and are connected with the internal revenue of the United States,—is not unconstitutional. either as purporting to authorize an unreasonable seizure and search, or as compelling a party to testify against himself.

[Cited in Re Platt, Case No. 11,212; U. S. v. Three Tons of Coal, Id. 16,515.]

Motion to quash an attachment.

HILL, District Judge. The questions now presented arise upon the following proceedings:

The applicant being the supervisor of internal revenue for the states of Alabama and Mississippi. called at the banking house of Messrs. J. & T. Green, and requested to see the checks received by them as such bankers on the previous day. which the Messrs. Green refused to exhibit; insisting that the supervisor, under the acts of congress, possesses no such right; and that, were such the provision of the act, it would be in violation of the constitution of the United States, and of no effect; whereupon the supervisor issued his summons directed to the Messrs. Green, requiring them to produce before him, at his office in Jackson, all books of accounts and papers containing entries of accounts between the banking house of said J. & T. Green and all other persons; which summons was duly executed, but which was not complied with. Whereupon application was made to me for a writ of attachment to com-

1 [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

pel said bankers to produce said books and papers; and upon proof of the execution of said summons, and the non-compliance therewith, the attachment was issued, and the said bankers appeared at the return thereof; and, by counsel, moved to quash the proceedings for the following reasons:

1. That the application showed no facts under the acts of congress giving to the district judge jurisdiction to entertain this proceeding.

2. That if the facts as stated were sufficient under the acts of congress to authorize this proceeding upon the part of the supervisor and judge, such legislative act would be repugnant to the constitution of the United States, and void.

The first question for consideration is, what power and authority does the act approved July 20, 1868, confer upon the supervisor in relation to the examination of books and papers of a private banker? The act approved June 30, 1864 [13 Stat. 223], provides that banks chartered or organized under a general law, with a capital not exceeding the sum of fifty thousand dollars, and bankers using or employing a capital not exceeding fifty thousand dollars, shall pay a tax of one hundred dollars; when using or employing a capital exceeding fifty thousand dollars, for every one thousand dollars in excess of fifty thousand dollars, the sum of two dollars. Every incorporated or other bank, and every person, firm, or company having a place of business where credits are opened by the deposit or collection of money or currency subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or for sale, shall be regarded as a bank or a banker.

Section 110 of the same act provides that there shall be levied, collected, and paid a tax of one-twenty-fourth of one per cent. each month upon the average amount of deposits of money subject to payment by check or draft, or represented by certificates of deposit, whether payable on demand or at a future day, with any person, bank, association, company, or corporation engaged in the business of banking; and a tax of one-twenty-fourth of one per cent. per month, as aforesaid, upon the capital of any bank, association, company, or corporation, and on the capital employed by any person in the business of banking, beyond the average amount invested in United States bonds; and further provides for making monthly returns, and the payment of such taxes, imposts, penalties, &c.

Section 99 of the same act further provides that there shall be paid on all sales made by brokers, banks, or bankers, whether for the benefit of others, or on their own account, the following taxes, that is to say: Upon all sales, or contracts for the sale of stocks, bonds, gold and silver bullion and coin, promissory notes or other securities, a tax of one cent for every hundred dollars of the amount of such sales or contracts, &c. The act further provides that, in all such sales, or contracts of sales, there shall be made and delivered by the seller to the buyer, a bill or memorandum of such sale or contract, on which there shall be affixed a lawful stamp or stamps, in value equal to the amount of tax on such sale, to be determined by the rates of tax before mentioned; and other provisions in relation to such tax, stamps, and penalties for non-compliance and violation, which need not be here stated.

From the above provisions of the internal revenue laws it will be seen that a very considerable revenue is imposed upon these banking associations, and persons engaged in banking, and various duties are imposed thereon. And to determine what taxes should be paid, the books and papers belonging to such banks and banking associations should be shown.

By reference to the act approved July 20, 1868, imposing taxes on spirituous liquors and tobacco, and for other purposes, it will be found that by section 49 of the act, after providing for the appointment of a supervisor of internal revenue, it is further provided that it shall be the duty of the supervisor, under the direction of the commissioner, to see that all laws and regulations relating to the collection of internal taxes are faithfully executed and complied with; to aid in the prevention, detection, and punishment of any frauds in relation thereto; and to examine into the efficiency and conduct of all officers of internal revenue within his district; and for such purposes he shall have the power to examine all persons, books, papers, accounts, and premises, and to administer oaths, and to summon any person to produce books and papers and to appear and testify before him, and compel a compliance with such summons in the same manner as assessors may do, &c.

That there exists a necessity for taxation, and to a very large amount, is not denied. That the amount, the subjects of taxation, and the mode of assessing and collecting the same, are questions alone to be determined by congress, the law-making power, and with which the courts have nothing to do, it being their duty to expound and enforce the laws, is also admitted. It was competent for congress to provide for the appointment of such officers as might be deemed necessary for the collection of the revenue, and to prescribe their duty. The act stated has provided for the appointment of a supervisor, and has prescribed his duties: (1) To see that the laws for the collection of internal revenue are faithfully executed and complied with. (2) To aid in the prevention and punishment of frauds in relation thereto. (3) To examine into the efficiency and conduct of the revenue officers of his district. And to enable him to perform any one or all of these duties he is invested with these extraordinary powers, as they are

termed, without which he would be unable to perform the duty assigned him.

It is contended by the counsel of the Messrs. Green that this power is only to be executed in the same cases, and in the same way that assessors may do under the act of 1866 [14 Stat. 98]. This is a mistake; the powers are of a different character altogether; it is only when the summons is not complied with that obedience thereto is to be enforced as provided for in the case of non-compliance with the summons issued by assessors, which is to apply for an attachment to the district judge of the district, or to a commissioner of the circuit court of the United States.

It is contended that before the Messrs. Green were under any obligation to produce their books and papers the supervisor was bound to inform them of his purpose in the inspection. This he was not bound to do; for such a disclosure might have defeated the very object of the examination. It might have been to reach a defaulting or fraudulent officer, or other person committing frauds on the revenue, who might thereby have been notified of such proceedings against him, and made his escape, or covered up his fraud.

Without further comment. I am satisfied that the supervisor is entitled under the law to the examination sought, and to this mode of procuring it; which brings us to the last proposition, and that is, the repugnance of these acts of congress to the constitution.

It is said that this is an attempt at an unreasonable seizure and search into the private affairs of the citizens, against which they are protected by the constitution. There is no attempt to investigate any of the private affairs of the Messrs. Green, only an examination into so much of their business as relates to the operations of their banking house and is connected with the subjects of taxation; beyond this, he has no right to institute an inquiry. Although the Messrs. Green are not operating under a charter, they are nevertheless doing business with the public as bankers. If doing a business legitimately,—and there is no charge that they are not, nor is it necessary, as we have seen, that there should be, to support this inquiry,—no injury can result to them from an inspection of their books and papers connected with this public business, in which the United States has an interest in the collection of the revenue imposed. I am satisfied that it is not an invasion of any of the rights secured under the constitution.

But it is contended that it is in violation of that portion of the constitution which protects parties against being compelled to testify against themselves. If the provision of the constitution protecting parties against being compelled to produce such papers and documents as may tend to subject them to a criminal prosecution applies in this case, they are relieved from such liability by the provisions of the act of congress approved February 25, 1868 (15 Stat. 37), which was intended to enable the government, through its officers, to detect and punish frauds by obtaining evidence from those otherwise protected under this provision of the constitution.

The unconstitutionality of the act conferring the power has been pressed by counsel with unusual ability and zeal, but he has failed to convince my mind of its correctness. It was competent for congress to provide the mode by which compliance with the demand for an inspection of such books or documents, as well as the testimony of witnesses, might be enforced, and it has adopted the measures stated in the act; referring it to the judge of the district, in whom judicial power is vested, to determine the rights of the parties and to enforce obedience to the laws; and has not left it to the supervisor to be the judge of the extent of his powers in such cases. If the Messrs. Green were of the opinion, as they, I am satisfied, were, that this demand upon them was not authorized by law, it was their right to refuse compliance until the question should be determined by the proper tribunal, and in the mode prescribed by law, and their non-production of their books and papers, under the circumstances, is by no means to be taken as a suspicion of their having been guilty of any omission, or any violation of law; for no man, however correct in his business, would be willing to have his affairs pried into by those having no legal authority to do so. And it is not to be presumed that the supervisor would desire to inquire into the private affairs of citizens for any other purpose than those connected with his official duties. To settle the legal rights of both parties without reflection on either, this case has been brought before me; and coming to the conclusion I have, I feel constrained to overrule the motion to quash the proceedings, and unless other proceedings are proposed, the Messrs. Green will be directed to produce such books and papers as the supervisor may desire to examine, connected with their banking operations; it being understood that this right upon the part of the supervisor extends only to such books and papers as relate to their banking operations, and are connected with the internal revenue of the United States.

Order accordingly.